IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| NICOLA HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:16-cv-402 (MTT) |
| | ) |
| TYSON FARMS INC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

Before the Court is Defendant Tyson Farms, Inc.'s motion for summary judgment. Doc. 27. The motion is **GRANTED**.

## I. BACKGROUND[1]

Plaintiff Nicola Hudson began working for Tyson as a tray packer at its Vienna, Georgia facility on August 31, 2015.[2] Doc. 27-2 ¶ 16. On her "Post-Offer Health Assessment," she stated that she suffered from asthma and back pain caused, as she elaborated, by "over exertion when working with residents at previous jobs (nursing home)." Doc. 27-6 at 102-03. In her deposition, however, she said the injury stemmed from a 2010 car accident. Doc. 27-5 at 211:7-10. On that same Post-Offer Health Assessment, she answered "No" when asked if she had "any work restriction." Doc. 27-6 at 102. However, within her first week on the job, Hudson complained of back pain to her line leader. Docs. 27-5 at 143:14-144:24. "[A] day or two later," Hudson was sent to the nurse's station to discuss her complaints of back pain. *Id.* at 147:2-17. The

---

[1] Unless otherwise stated, the following facts are undisputed.

[2] This was Hudson's second stint working for Tyson. She first worked for Tyson for one month in 2000. Doc. 27-4 at 99:17-100:1.

nurse on duty sent Hudson home because of her complaints and gave her a "job placement and physical recommendations form" to be filled out by her personal doctor. *Id.* at 147:22-148:6; Doc. 27-6 at 106.

On September 11, 2015, Hudson saw her personal doctor, a Dr. Oliver, who completed the Job Placement Physical Recommendations form, giving Hudson a "temporary work restriction" with no "prolonged standing . . .[for] more than an hour" and "sit[ting] for 15 min[utes] after every hour of standing." Doc. 27-6 at 107; *see also* Doc. 27-5 at 160:2-9. However, Dr. Oliver gave no diagnosis of Hudson's condition and failed to state how long Hudson was required to be on those restrictions. *See* Doc. 27-6 at 107. That same day, Hudson returned to work for her evening shift and gave Dr. Oliver's recommendation to Tyson's human resources department. Doc. 27-5 at 169:24-170:12. Hudson was then told that Tyson could not accommodate, and that she could not work under, Dr. Oliver's restrictions. *Id.* at 170:19-25, 180:7-23. Hudson then saw Dr. Christopher R. Inhulsen. *Id.* at 183:12-24; Doc. 27-6 at 109. According to Dr. Inhulsen's notes, Hudson asked him to lift Dr. Oliver's restrictions so that she could return to work and "also requested that [Dr. Inhulsen] mention that she should have a stand and [two] floormats." 27-6 at 109. But based on his examination, Dr. Inhulsen concluded that Hudson's back was "normal" and that she could return to work with "[n]o [r]estrictions." Doc. 27-6 at 110, 112. Nevertheless, as Hudson apparently requested, Dr. Inhulsen also recommended that Hudson use two floor mats and a stand.[3] Docs. 27-5 at 190:20-191:4; 27-6 at 109-112.

---

[3] The parties do not provide a definition of floor mats or stands. But, from Hudson's deposition testimony, a stand is used by workers to prevent them from having to bend while working and a floor mat goes on top of the stand for support. Doc. 27-5 at 200:21-201:3.

Based upon Dr. Inhulsen's recommendations, Tyson informed Hudson she could return to work with no restrictions and that she could use floor mats and a stand, which were available to employees throughout the facility. Doc. 27-5 at 190:21-25, 191:10-22, 192:7-22. Although Hudson was also told there were not enough mats and stands to guarantee one or the other would always be available, there is no evidence that Hudson was not able to use a mat or stand after returning to work that day, which was her last on the job. *Id.* at 200:6-20. However, that last day on the job, Hudson asked her line leader if she could leave her station to use her inhaler, stating that the ammonia in the plant was aggravating her asthma; Hudson was told to wait until her lunch break. *Id.* at 205:2-25. Hudson then finished her shift. *Id.* at 204:17-18. The next day, September 16, she did not come into work, and on September 17 she resigned from her job. Doc. 27-6 at 113. On September 18, 2015, Hudson filed an intake questionnaire with the EEOC stating that Tyson discriminated against her because of her asthma and back pain. Doc. 27-6 at 116-17. Then, on October 20, 2015, Hudson filed a Charge of Discrimination with the EEOC in which she stated Tyson refused to accommodate her because there were not enough "stands in the plant" and that, generally, she was "discriminated against because of [her] disability." *Id.* at 118. Hudson then received a right to sue letter and timely filed this lawsuit, proceeding pro se, alleging that Tyson failed to accommodate her disabilities and constructively discharged her. Docs. 1; 1-1. Tyson now moves for summary judgment. Doc. 27.

## II. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine dispute of material fact to defeat a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (citation omitted). A material fact is that which is relevant or necessary to the outcome of the suit. *Id.* at 248. And a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Hudson is proceeding pro se. "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir.1998) (citation omitted). "However, 'a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to [her] case in order to avert summary judgment.'" *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) (quoting *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.1990)). "Although [courts should] show leniency to pro se litigants, [they] will not serve as de facto counsel or rewrite an otherwise deficient pleading in order to sustain an action." *Id.* (citation and quotation marks omitted).[4]

### III. ADA FAILURE TO ACCOMMODATE CLAIMS

The Americans with Disabilities Act (ADA) prohibits discrimination against a qualified individual on the basis of disability. 42 U.S.C. § 12112(a). Hudson claims that Tyson violated the ADA by failing to accommodate her disabilities: her back pain and asthma. Doc. 1 at 5. The burden-shifting analysis of Title VII employment

---

[4] Although, as required, the Court liberally construes Hudson's pleadings, the Court notes that Hudson has some experience in pursuing discrimination claims. *Hudson v. Middle Flint Behavioral Healthcare, et al.*, 5:12-cv-284 (MTT); *Hudson v. Sykes Enter., Inc.*, 5:17-cv-304 (CHW).

discrimination cases also applies to ADA claims. *Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999) (citation omitted). Under this analysis, a plaintiff first holds the burden to establish a prima facie case of discrimination by proving by a preponderance of the evidence that she "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." *Id.* (citation omitted).

A plaintiff can establish that she has a disability be proving she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Under the physical impairment definition of disability, a plaintiff must first establish she has an impairment; then, the court "must identify the life activity that the [p]laintiff claims has been limited and determine whether it is a major life activity under the ADA." *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004) *superseded by statute on other grounds as recognized by Adkison v. Willis*, 214 F.Supp.3d 1190 (N.D. Ala. 2016). "Finally, the [C]ourt must determine whether the impairment 'substantially limits' that activity." *Id.* When making this determination, the Court should consider the manner in which the individual is limited in the activity as "compared to most people in the general population" and may consider the "difficulty, effort, or time required to perform a major life activity" as well as the length of time the individual can perform the activity and pain experienced. 29 C.F.R. § 1630.2(j)(4).

Additionally, to avoid summary judgment on a failure to accommodate claim, a plaintiff must (1) identify an accommodation that allows her to perform the essential

functions of her job and (2) establish that accommodation is reasonable "in the run of cases" or, alternatively, "is reasonable under the particular circumstances of the case." *United States Equal Empl. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1346 (11th Cir. 2016) (citation omitted); *see also Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000); *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997).

**A.     Failure to Accommodate Hudson's Back Injury**

**1.   Whether Hudson's Back Injury Is a Disability Under The ADA**

A reasonable jury could not find that Hudson's back pain is an impairment. Hudson alleges that various activities, including bending, lifting, and standing for long periods of time, cause her pain, but there is no objective medical evidence to support these allegations. Hudson admitted that she has not sought treatment for her back since 2010 and that her back has not been x-rayed or scanned since that time. Doc. 27-5 at 187:2-11, 189:6-12. While Dr. Oliver recommended that Hudson be placed on restrictions, he provided no diagnosis of her back pain or its cause. Doc. 27-6 at 207. The next day, Dr. Inhulsen concluded that Hudson's back was "normal" with "full range of motion, no costovertebral angle tenderness, no kyphosis, no scoliosis, [and a] normal exam of [her] spine." Doc. 27-6 at 109-110. While Hudson's subjective complaints of back pain count for something, there is not sufficient evidence to allow a reasonable jury to find that Hudson is impaired and, in turn, that she is disabled within the ADA.

Moreover, even if her back pain is considered an impairment, Hudson has provided no evidence, other than her allegations and Dr. Oliver's quickly supplanted restrictions, that her back pain substantially limits a major life activity. Construing her allegations liberally, it seems that Hudson alleges that her back injury substantially limits

the major life activities of sleeping, bending, playing with her son, and running. Doc. 27-5 at 213:7-20, 214:18-24, 215:18-21, 216:22-24. Although Hudson testified that she has to sleep on her side because of her back, she did not state that this causes her to lose sleep on a regular basis. Doc. 27-5 at 213:9-14. Hudson testified that activities that require bending, such as housework and cleaning, cause her pain. *Id.* at 214:18-215:2. However, Hudson also testified that she was able to do these things while working as a certified nursing assistant (CNA) before and after her employment with Tyson. Doc. 27-4 at 53:11-55:4. Hudson also did not testify that her back substantially limits her from playing with her son but only that it prevents her from "get[ting] down on the floor and play[ing] with [him] like [she] would like to." *Id.* at 213:18-214:1. Finally, Hudson testified that she could not run much but provides no other detail about how this activity is substantially limited by her back. *Id.* at 216:22-24. Putting aside whether all of these activities are in fact major life activities, from the evidence, a reasonable jury could not find that Hudson's back pain substantially limits her in these activities in comparison to the abilities of an average person.

Additionally, to the extent Hudson alleges that she is substantially limited in the major life activity of working, that also fails. "A plaintiff claiming that [she] is substantially limited in the major life activity of working must establish that [her] condition significantly restrict[s] [her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Shepard v. United Parcel Serv., Inc.*, 470 F. App'x 726, 729 (11th Cir. 2012) (citations and quotation marks omitted) (alterations in original). "An impairment does not substantially limit the ability to work merely because it prevents a

person from performing either a particular specialized job or a narrow range of jobs." *Id*. Hudson first injured her back in 2010, and since that time she has held numerous jobs, most notably as a CNA. Docs. 27-4 at 47:3-9, 70:12-18, 76:11-24, 88:11-19; 97:12-16; 27-6 at 75-79, 86-87. Hudson testified that the only job duties that bothered her back, while working as a CNA, was "lifting heavy individuals" without help—or weight more than her bodyweight—and "standing" but that she was otherwise able to perform the requirements of the job, and her back did not bother her as it did at Tyson because she did not have to "stand in one place for . . . eight, nine hours."[5] Doc. 27-4 at 90:22-91:4; *see also* Doc. 27-4 at 98:18-20. Indeed, Hudson returned to work as a CNA after her employment with Tyson, which required her to stand for at least 5 hours a day, give patients baths, to clean, and perform other activities that require bending. *Id*. at 53:11-55:4. Based on Hudson's testimony, the only job that her back pain substantially limits her in is her job with Tyson. But "the inability to perform a single, particular job . . . [does not] constitute a substantial limitation in the major life activity of working." *Shepard,* 470 F. App'x at 729 (citation omitted). Thus, a reasonable jury could not find Hudson is substantially limited in the major life activity of working.

Finally, Hudson has presented no evidence from which a reasonable jury could find she has a past record of her back pain substantially limiting her in a major life activity or that Tyson regarded her as having such an impairment. 42 U.S.C. § 12102(1)(B)-(C). Although Tyson was made aware of her back pain, "[t]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled," and "[a]n employee who is

---

[5] According to Dr. Inhulsen's notes, Hudson stated that she had "worked in the nursing home and did not have problems with [her] back." Doc. 27-6 at 109. Hudson claims this is a "typo" by the nurse at Dr. Inhulsen's office. Doc. 27-5 at 187:17-188:7.

perceived by her employer as having only a temporary incapacity to perform the essential functions of the job is not perceived as 'disabled.'" *Sutton v. Lader,* 185 F.3d 1203, 1209 (11th Cir. 1999) (citations omitted). Here, after Dr. Oliver's restrictions were quickly supplanted by Dr. Inhulsen's, Tyson did not even consider Hudson to be temporarily incapacitated due to her back pain because she was told to return to work with no restrictions, and, as such, it did not regard her as having an impairment.

In summary, Hudson's claim fails because there is no genuine fact dispute as to whether Hudson's back pain is a disability within the ADA. The undisputed evidence shows that Hudson has failed to establish that she (A) has a physical or mental impairment that substantially limits her in a major life activity; (B) has a record of such an impairment; or (C) that Tyson, or any other employer, regarded her as having such an impairment. *See* 42 U.S.C. § 12102(1). Accordingly, Tyson is entitled to judgment as a matter of law.

### 2. Reasonable Accommodation of Hudson's Back Injury

Even if Hudson's back injury is a disability, a reasonable jury could not find that Hudson has proved there is a reasonable accommodation for her back that Tyson failed to provide. First, to the extent Hudson relies on Dr. Oliver's recommendation that she not stand for long periods and rest for fifteen minutes after standing, those restrictions were unreasonable as a matter of law.[6] Reasonable accommodations may include job restructuring, such as "altering or eliminating some of its marginal functions," but an

---

[6] Arguably, given the timeline of events, Dr. Oliver's recommendations are not relevant. Almost immediately after seeing Dr. Oliver, Hudson saw Dr. Inhulsen who concluded that the Plaintiff's back was normal. Docs. 27-5 at 184:3-9, 190:19-25; 27-6 at 112. Although Dr. Inhulsen, at the Plaintiff's request, recommended some accommodation for Hudson's complaints, Tyson, as will be discussed, provided those accommodations. Nevertheless, the Court will address Hudson's argument that Tyson failed to accommodate Dr. Oliver's recommendations.

"employer [is] not required to transform the position into another one by eliminating functions that are essential to the nature of the job as it exists." *Lucas v. W.W. Granger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001). Whether a job function is essential is determined by consideration of a number of factors including the evaluation of the employer, which is given great weight, and "the consequences of not requiring the [employee] to perform the function." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1258-59 (11th Cir. 2007) (quotation marks and citations omitted). Tyson asserts and Hudson does not dispute that standing for long periods of time is an essential function of Hudson's job as tray packer. From the job posting, Hudson was aware that the job requirements included standing for long periods of time. Doc. 27-4 at 104:9-18, 114:12-14. And she admitted that Dr. Oliver's recommended restrictions were inconsistent with those requirements and that she would not be able to perform the job under those restrictions. *See* Docs. 27-5 at 159:19-20 ("I know that job is not consistent of sitting down. I know that."); *see also* Docs. 27-4 at 104:11-104:15; 27-5 at 170:2-16. Accommodating Dr. Oliver's restrictions would have prevented Hudson from performing an essential function of the job, and, therefore, that requested accommodation was unreasonable.

Further, the evidence shows that, to the extent Dr. Inhulsen recommended accommodations for Hudson's back injury, Tyson did not deny those recommendations. Hudson's contention, apparently, is that, because Tyson could not guarantee mats and a stand specifically for her use at all times, it failed to reasonably accommodate her back injury. But Tyson did not have to guarantee the availability of a mat or stand to comply with Dr. Inhulsen's recommendations. Dr. Inhulsen cleared Hudson to return to

-10-

work with "no restrictions" while also recommending that she use mats and a stand. Doc. 27-6 at 112. But he did not state that Hudson could not work without a mat or stand. *See id.* Nevertheless, in accordance with these recommendations, Tyson told Hudson that she could return to work and that she could use mats and stands, which were readily available throughout the facility.[7] And although Hudson only worked one day after discussing Dr. Inhulsen's recommendations with Tyson, there is no evidence that mats or stands were not available to her. Moreover, an employer is not required to accommodate an employee in the exact manner the employee requests but is only required to offer reasonable accommodations based on the circumstances, which Tyson did. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) ("[T]he use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." (quotation marks and citation omitted)).

Finally, Tyson acted reasonably in response to Hudson's request for accommodation and engaged her in an interactive process to find a reasonable accommodation. Hudson ended that process by quitting her job and, thus, Tyson cannot be held liable for that process's failure. *See Gilliard v. Georgia Dep't of Corr.*, 500 F. App'x 860, 868 (11th Cir. 2012) ("In *Stewart,* we held that there could be no liability under the ADA where the employer did not obstruct the informal interactive process, made reasonable efforts to communicate with the employee and to provide

---

[7] The Court notes that Hudson claims it was difficult at times to procure a mat or stand. But the evidence shows that she was able to use a mat and stand during all of her shifts except that, on the day she complained of back pain, another employee took her mat and stand during her lunch break. Doc. 27-5 at 149:5-20, 151:5-7, 153:11-15, 154:10-155:2.

accommodations based on the information it possessed, and where the employee's actions caused the breakdown in the interactive process." (citing *Stewart*, 117 F.3d at 1285-86)).

Accordingly, if Hudson's back injury is considered a disability, her claim still fails. First, to the extent Hudson relies on Dr. Oliver's restrictions, those were unreasonable as a matter of law. Second, the evidence shows that Tyson did reasonably accommodate Dr. Inhulsen's recommendations, to the extent he recommended accommodations, and Hudson's contention that Tyson had to accommodate her in the manner she requested was unreasonable. Finally, her claim also fails because Tyson reasonably responded to Hudson's requests by engaging her in an interactive process, which Hudson ended. Thus, Tyson is entitled to judgment as a matter of law.

**B.     Failure to Accommodate Hudson's Asthma**[8]

Under the ADA Amendments of 2008 (ADAAA), courts must determine whether a disability substantially limits a major life activity "without regard to the ameliorative effects of mitigating measures." 42 U.S.C. 12102(4)(E)(i). But these amendments did not alter a plaintiff's burden to establish she is disabled. *See id.* Accordingly, a plaintiff must provide evidence regarding how her condition would affect her if it were left untreated. *See Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 857 F. Supp. 2d

---

[8] Tyson argues that Hudson failed to exhaust her administrative remedies as to her asthma claim. Although Hudson did not mention her asthma claim in her EEOC charge, she did state in her intake questionnaire that she was discriminated against because of her asthma. Doc. 27-6 at 114-18. Further, her charge states generally that she was discriminated against because of her disability, which could refer to her asthma or her back. *Id.* at 118. An intake questionnaire may, in some circumstances, be considered sufficient to exhaust a plaintiff's administrative remedies. *See Francois v. Miami Dade Cty. Port of Miami*, 432 F. App'x. 819, 821-22 (11th Cir. 2011); *Bost v. Federal Express Corp.*, 372 F.3d 1233, 1241 (11th Cir. 2004); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001). Despite moving for summary judgment on this issue, Tyson has not developed the record beyond pointing out that Hudson did not mention her asthma in her EEOC charge. Therefore, based on the record, the Court cannot conclude that Hudson failed to exhaust her administrative remedies.

1252, 1263 (M.D. Ala. 2012). Hudson does not specify a major life activity that her asthma affects, much less provide evidence of how her asthma, if left untreated, would substantially limit this activity. She did testify that the ammonia in the Tyson plant aggravated her asthma. But she did not state how this limited her. Doc. 27-5 at 205:12-20. Indeed, Hudson testified that she did not even need an inhaler prior to being exposed to the ammonia at the Tyson facility. *Id.* at 186:6-9. Accordingly, Hudson has not presented sufficient evidence to establish a genuine fact dispute as to whether her asthma is a disability.

Moreover, from the evidence presented, a reasonable jury could not find that Hudson has a past record of her asthma substantially limiting her in a major life activity or that Tyson regarded her as having such an impairment. Hudson informed Tyson of her asthma when she was hired. Doc. 27-6 at 102-03. But "[t]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled," and "[a]n employee who is perceived by [her] employer as having only a temporary incapacity to perform the essential functions of the job is not perceived as 'disabled.'" *Sutton,* 185 F.3d at 1209. Hudson has presented no evidence that Tyson ever regarded her as disabled due to her asthma.

Accordingly, Hudson's ADA claim regarding her asthma fails because there is no evidence to establish that her asthma is a disability within the ADA.

Further, even if Hudson's asthma was a disability, she never established an accommodation for that impairment. She testified in her deposition that she wanted the

ability to take breaks to use her inhaler when needed.[9] Doc. 27-5 at 225:9-14. But she never requested such an accommodation. She did inform Tyson that she had asthma when she was hired, and she asked her line leader, on her last day on the job, if she could take a break to use her inhaler, although she has not explained why it would be necessary to take a break to use an inhaler. Doc. 27-5 at 203:5-207:2. But although she discussed accommodations for her back with human resources representatives, Hudson never informed a human resources representative that her asthma required an accommodation or presented any medical evidence that such an accommodation was required. Docs. 27-5 at 210:17-25; 27-6 at 96-97. That she asked her line leader if she could use her inhaler on one day cannot serve as a request for accommodation within the meaning of the ADA.[10] And, even if this could serve as a request, she left her job before there could be any sort of interactive process to reach a reasonable accommodation. *See Gilliard*, 500 F. App'x at 868 (stating the employer cannot be held responsible when it is the employee who causes the breakdown in the interactive process).[11]

---

[9] In her Statement of Material Facts, Hudson also alleges that Tyson should have provided masks to prevent aggravation from ammonia exposure. Doc. 32-11 at 3. But there is no evidence that Hudson requested a mask from Tyson and, so, it cannot serve as a requested accommodation.

[10] The Eleventh Circuit has not stated exactly what is required to establish a request for accommodation. *Holly*, 492 F.3d at 1261 n. 14. In the context of a Fair Housing Act claim, the Eleventh Circuit has stated that "[a] plaintiff can be said to have made a request for accommodation when the defendant has enough information to know of both the disability and desire for an accommodation" so that the employer might "make appropriate inquiries about the possible need for an accommodation." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1226 (11th Cir. 2016) (quotation marks and citation omitted). Hudson's request to her line leader cannot be said to be sufficient to put Tyson on notice of both her disability and desire for an accommodation, especially considering she quit the next day without engaging in any interactive process to reach a reasonable accommodation.

[11] Hudson also alleges that Tyson constructively discharged her because it forced her to resign by failing to accommodate her disabilities. Given that the Court has determined that Hudson was not disabled within the ADA and that, even so, Tyson reasonably accommodated her, this claim is moot. Moreover, to survive summary judgment on a constructive discharge claim, a plaintiff must present "substantial evidence that employment conditions were intolerable" such that "a reasonable person would have felt

## IV. CONCLUSION

Accordingly, Tyson's motion for summary judgment (Doc. 27) is **GRANTED**, and Hudson's claims are **DISMISSED with prejudice**.

**SO ORDERED**, this 19th day of January, 2018.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT

---

compelled to resign." *Siudock v. Volusia Cty. Sch. Bd.*, 568 F. App'x 659, 664 (11th Cir. 2014) (citing *Brocha v. City of Rivera Beach*, 304 F.3d 1144, 1155, 1161 n.30 (11th Cir. 2002)). It is undisputed that Hudson did suffer back pain from her job with Tyson, and she testified that the ammonia in the plant irritated her asthma. But beyond Hudson's allegations, she has provided no relevant admissible evidence regarding her back pain or difficulty breathing to establish that a reasonable person would be compelled to quit under those circumstances. *Id.* at 664-65 ("In assessing constructive discharge claims, [courts do] not consider a plaintiff's subjective feelings about [her] employer's actions, but whether a reasonable person in the plaintiff's position would be compelled to resign." (citing *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998)). Accordingly, a reasonable jury could not find in Hudson's favor on this claim.